**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| CJ HOLDING CO., *et al.*, | § | |
| | § | |
| Debtors. | § | |
| _____ | § | |
| JOHN COLE, | § | |
| | § | CIVIL ACTION NO. H-18-3250 |
| Appellant, | § | |
| | § | |
| VS. | § | |
| | § | |
| NABORS CORPORATE SERVICES, INC., | § | |
| | § | |
| Appellee. | § | |

**MEMORANDUM OPINION AND ORDER**

Cole appeals from the bankruptcy court's Order enforcing a December 2016 Confirmation Order and Plan provision enjoining him from pursuing litigation or arbitration against Nabors Corporate Services, Inc. and Nabors Industries, Ltd. (Bankr. Docket Entry Nos. 2501, 2514). Cole challenges the bankruptcy court's jurisdiction to enforce the December 2016 Confirmation Order and argues that the court violated Bankruptcy Procedure Rule 9006(d). (Docket Entry No. 6). Nabors responded, and Cole replied. (Docket Entry Nos. 8, 9).

Based on the parties' briefs, the response and reply, the record, and the applicable law, the court denies Cole's appeal and affirms the bankruptcy court's Order. The reasons are detailed below.

**I.      Background**

John Cole was an employee of Nabors Completion & Production Services. In May 2014, Cole filed a claim with the Equal Employment Opportunity Commission for sexual harassment, discrimination, and retaliation against Nabors Completion. The Commission issued a right-to-sue order in August 2016. (Docket Entry No. 2 at 3505). In 2015, Nabors Completion became a wholly owned subsidiary of C&J Energy Services, Ltd., and changed its name to C&J Well Services.[1]

In July 2016, C&J Well Services and several other affiliated companies filed voluntary petitions under Chapter 11 of the United States Bankruptcy Code. (Docket Entry No. 2 at 3505). The bankruptcy court entered a Bar Date Order, requiring any person asserting claims against the debtors to file proofs of claim by November 8, 2016. (Bankr. Docket Entry No. 756). The Order stated that creditors who did not file proofs of claim by that date would be "forever barred, estopped, and enjoined from asserting such claims against the [d]ebtors," and the "[d]ebtors and their property shall be forever discharged from any and all indebtedness or liability with respect to or arising from such claim." (*Id.*).

The debtors provided Cole, among others, notice of the Bar Date Order. He did not file a proof of claim by the bar date. On November 17, 2016, 10 days after the bar date expired, Cole filed a motion for relief from the automatic stay, seeking the bankruptcy court's permission to bring his claims against C&J Well Services in litigation or in arbitration. (Bankr. Docket Entry No. 821). The next day, before the bankruptcy court ruled on the motion, Cole sued Nabors Industries, Ltd. and Nabors Corporate Services, Inc. in the United States District Court for the Western District of

---

[1] Nabors Red Lion Limited was a wholly owned subsidiary of Nabors Industries, Ltd. Nabors Red Lion merged with C&J Energy Services, Inc. in March 2015, and became C&J Energy Services, Ltd. After this merger, C&J Well Services became a wholly owed subsidiary of C&J Energy Services, Ltd, and was indirectly owned by Nabors Industries.

Texas,[2] asserting the same claims he had asserted before the Equal Employment Opportunity Commission. (Docket Entry No. 8 at 12 & n.5).

The bankruptcy court confirmed the debtors' reorganization Plan in December 2016. (Bankr. Docket Entry No. 1057). The Confirmation Order released all claims against the debtors, stating as follows:

> **Release by Holders of Claims and Interests**. As of the Effective Date, each Releasing Party is deemed to have released and discharged each Debtor, Reorganized Debtor, and Released Party from any and all Causes of Action, whether known or unknown, including any derivative claims, asserted on behalf of the Debtors, that such entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtor[']s, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions . . . the Plan . . ., or upon any *other related act or omission, transaction, agreement, event, or other occurrence*, taking place on or before the Effective Date. . . . [T]he foregoing release does not release any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan.

> **Injunction**. [A]ll Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against . . . the Debtors . . . or the Released Parties: (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interest; . . . and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

> **Defined Terms**.

> "**Released Party**" means . . . (a) the Supporting Creditors; (b) the Backstop Parties; (c) the Credit Agreement Agent; (d) the Lenders; . . . (j) Nabors; and (k) . . . each of the foregoing entities' . . . current and former Affiliates and subsidiaries. . . .

> "**Releasing Parties**" means . . . (a) the Supporting Creditors; (b) the Backstop parities, (c) the DIP Facility Lenders, (d) the Credit Agreement Agent, (e) the

---

[2] The relevant case number is 5:16-cv-1168.

Lenders, (f) the DIP Facility Agent, (g) the Committee and its members, (h) Nabors, (i) all holders of Claims, (j) all holders of Interests, and (k) . . . each of the forgoing entities['] current and former Affiliates and subsidiaries . . . .

**"Nabors"** means Nabors Industries Ltd. and its subsidiaries and Affiliates other than the Debtors.

(Docket No. 2 at 3917, 3919–20, 3951–53) (emphasis added).

The Confirmation Order also stated that:

[t]he release by the Releasing Parties . . . set forth in . . . the Plan, is an essential provision of the Plan. The Third Party Release is: (a) in exchange for the good and valuable consideration provided by the Released Parties; (b) a good-faith settlement and compromise of the claims and Causes of Action released by the Third Party Release; (c) materially beneficial to, and in the best interests of, the Debtors, their Estates, and their stakeholders, and is important to the overall objectives of the Plan to finally resolve certain Claims among or against certain parties in interest in these Chapter 11 Cases; (d) fair, equitable, and reasonable; (e) given and made after due notice and opportunity for hearing; and (f) a bar to any of the Releasing Parities asserting any claim or Cause of Action released by the Third Party Release against any of the Released Parties; and (g) consistent with sections 105, 524, 1123, 1129, and 1141 and other applicable provisions of the Bankruptcy Code.

(Docket Entry No. 2 at 3706–07).

On March 4, 2017, Cole filed an amended motion in the bankruptcy court for relief from the automatic stay so that he could pursue his lawsuit against Nabors Corporate and Nabors Industries. (Bankr. Docket Entry No. 1325). The bankruptcy court held a hearing and then denied Cole's motion, with prejudice. (Bankr. Docket Entry No. 1403). Cole moved for reconsideration, and the bankruptcy court modified the order to deny the motion without prejudice. (Bankr. Docket Entry Nos. 1440, 1449). Cole did not file a new motion or appeal the denial.

Cole proceeded with his lawsuit against Nabors Corporate and Nabors Industries. In March 2017, the district court compelled Cole to proceed to arbitration. (Docket Entry No. 8 at 14). On August 23, 2018, before the arbitration hearing was held, Nabors Corporation filed a motion with

the bankruptcy court, seeking a permanent injunction precluding Cole from pursuing either his lawsuit or arbitration.  (*Id*.; Bankr. Docket Entry No. 2491).

On August 28, 2018, the bankruptcy court granted Nabors Corporation's motion, ruling that Cole "is permanently enjoined from pursuing any and all claims" against the debtors and other parties released in the Plan.  (Bankr. Docket Entry No. 2501).  The bankruptcy court ordered Cole to dismiss with prejudice both his lawsuit in the district court and the related arbitration.  (*Id*.).  Cole argues that he did not have enough time to respond to the motion before the bankruptcy court ruled, without a hearing, six days after the motion was filed.  Cole appealed the Order in September 2018.  (Docket Entry No. 1).

Cole argues that the bankruptcy court did not have jurisdiction to enforce the Confirmation Order and Plan Injunction by enjoining him from pursuing his lawsuit and arbitration against the Nabors entities, because they were not parties to the bankruptcy proceeding, and because the lawsuit and arbitration would not affect either the debtors' estate or the bankruptcy administration.  Cole also argues that the bankruptcy court violated the Federal Rules of Bankruptcy Procedure by not either allowing him time to respond to the motion, issuing an order shortening the time to respond, or holding a hearing.  (Docket Entry No.1); FED. R. BANKR. P. 9006, 9014.

The Nabors entities respond that the bankruptcy court had jurisdiction to enjoin Cole from pursuing claims against released parties in the Plan Confirmation Order.  Cole had the opportunity to file proofs of these claims in the bankruptcy court, but he failed to do so.  Cole may not, according to Nabors, bring these claims in litigation or in arbitration, because claim and issue preclusion apply, and he may not collaterally attack the bankruptcy court's jurisdiction to issue the Confirmation Order and the subsequent injunction.

Nabors Corporate and Nabors Industries also argue that, even if the bankruptcy court issued the August 2018 injunction without giving Cole time to respond, the error is harmless. They contend that Cole did not, and cannot, show that his claims against the Nabors entities can survive the December 2016 Confirmation Order.

Each argument and response is analyzed below.

## II.     Jurisdiction and Standard of Review

A federal district court has jurisdiction to hear appeals from a bankruptcy court's final orders under 28 U.S.C. § 158(a). The district court reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*. *In re Whitley*, 737 F.3d 980, 985 (5th Cir. 2013); *In re Lothian Oil, Inc.*, 650 F.3d 539, 542 (5th Cir. 2011). The bankruptcy court's jurisdiction is a legal question reviewed *de novo*. *In re 804 Congress, LLC*, 756 F.3d 368, 372–73 (5th Cir. 2014); *see also Don Hanvey Oil Tr., Inc. v. Unit Tex. Drilling, LLC*, No. C-10-202, 2011 WL 606264, at *4 (S.D. Tex. Feb. 16, 2011) (applying *de novo* review to the bankruptcy court's plan interpretation because it is a legal question). Matters within a bankruptcy judge's discretion are reviewed for abuse of discretion. *In re Gandy*, 299 F.3d 489, 494 (5th Cir. 2002); *In re Waco Town Square Partners, LP*, 536 B.R. 756, 761 (S.D. Tex. 2015). A bankruptcy court abuses its discretion when it applies an improper legal standard or bases its decision on clearly erroneous findings of fact. *In re Crager*, 691 F.3d 671, 675 (5th Cir. 2012).

## III.    Analysis

### A.     Jurisdiction

#### 1.      Preclusion

A bankruptcy court's jurisdiction is governed by 28 U.S.C. § 1334. District courts, and

therefore bankruptcy courts, have exclusive jurisdiction over "all cases under title 11," including jurisdiction over "all the property, wherever located, of the debtor as of the commencement of such case, and of property of the estate." 28 U.S.C. § 1334(e); *In re TMP Procurement Corp.*, 764 F.3d 512, 523 (5th Cir. 2014).

A bankruptcy court also has "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). "Before confirmation of the bankruptcy plan, a proceeding is related to the bankruptcy case if the 'outcome could conceivably have any effect on the estate being administered in bankruptcy.'" *In re Galaz*, 841 F.3d 316, 322 (5th Cir. 2016) (quoting *In re Spillman Dev. Grp., Ltd.*, 710 F.3d 299, 304 (5th Cir. 2013)). "After confirmation, 'the debtor's estate, and thus bankruptcy jurisdiction, ceases to exist, other than for matters pertaining to the implementation or execution of the plan.'" *Id.* (quoting *In re Enron Corp. Sec.*, 535 F.3d 325, 335 (5th Cir. 2009)). For a bankruptcy court to enforce the plan after confirmation and to enjoin a plaintiff from pursuing a claim, two requirements must be met: (1) the bankruptcy court must have jurisdiction to hear the plaintiff's claim under 28 U.S.C. § 1334; and (2) the bankruptcy court's confirmation order must specifically approve the release of the plaintiff's claim. *See Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 151–52 (2009); *see also Hernandez v. Larry Miller Roofing, Inc.*, 628 F. App'x 281, 286 (5th Cir. 2016) (a plan must specify a creditor's released claims to bar a subsequent proceeding by the creditor against a third party).

The parties do not dispute that Cole's claims of sexual harassment, discrimination, and retaliation are "based on," "relate to," or "arise from" the actions of C&J Services, one of the debtors in the bankruptcy proceeding. Because the bankruptcy court "plainly had jurisdiction to interpret its own [confirmation order]," *Travelers Indem.*, 557 U.S. at 151, it did not err in finding that Cole's

claims were released by the Order.[3]  The remaining question is whether the bankruptcy court had jurisdiction to approve the release of Cole's identical claims in litigation or arbitration against Nabors Corporate and Nabors Industries, who were not debtors in the bankruptcy proceeding.

Cole argues that, although the claims he asserted against Nabors Corporate and Nabors Industries in the district court are identical to those he sought to assert against the debtors in the bankruptcy proceeding, that is "insufficient to bring a third-party dispute within a bankruptcy court's jurisdiction."  (Docket Entry No. 6 at 17 (citing *In re Zale Corp.*, 62 F.3d 746, 753 (5th Cir. 1995)). According to Cole, his lawsuit will not affect the debtors' estate.  He argues that he is not seeking recovery from C&J Well Services or other debtors; the relief he is seeking will not be paid out of the debtors' property; and the debtors are not obligated to indemnify or compensate Nabors Industries and Nabors Corporate if Cole prevails in the litigation or arbitration.  (Docket Entry No. 6 at 17).

In *Travelers Indemnity Co. v. Bailey*, 557 U.S. 137 (2009), the Supreme Court reviewed a bankruptcy court's order enjoining a creditor's state-court lawsuit against the debtor's insurer, based on allegations of the insurer's wrongdoing in insuring the debtor. 557 U.S. at 140.  The Supreme Court held that creditor's subsequent claims against the issuer were released in the bankruptcy court because they were covered by the bankruptcy court's order confirming the plan.  *Id*. at 151.  As to the creditors' challenge to the bankruptcy court's jurisdiction, the Court upheld the bankruptcy court's order on the narrow ground of preclusion.  Although "anyone who objected was free to argue that the Bankruptcy Court had exceeded its jurisdiction, and the District Court or Court of Appeals could have raised such concerns *sua sponte*," a creditor must raise that challenge directly in the

_____

[3] The Confirmation Order provides that "Released Party" includes Nabors Industries and its "current and former Affiliates and subsidiaries." (Docket Entry No. 2 at 3645, 3647, 3919).

bankruptcy court. *Id*. at 152. Once the confirmation order became final, preclusion prevents the creditor from challenging the enforcement of the order in a later litigation, because he was a party to the bankruptcy proceeding and had the opportunity to object to the bankruptcy court's jurisdiction in that forum. *Id*. 152–53.

The Supreme Court held that preclusion has equal force in preventing a collateral attack on the bankruptcy court's decision confirming its own subject-matter jurisdiction. *Id*. (citing *Kontrick v. Ryan*, 540 U.S. 443, 445 n.9 (2004) ("Even subject-matter jurisdiction . . . may not be attacked collaterally."); *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371, 376 (1940) ("[Federal courts] are courts with authority, when parties are brought before them in accordance with the requirements of due process, to determine whether or not they have jurisdiction to entertain the cause and for this purpose to construe and apply the statute under which they are asked to act.")). But the Court emphasized that it "[did] not resolve whether a bankruptcy court . . . could properly enjoin claims against nondebtor insurers that are not derivative of the debtor's wrongdoing." *Travelers Indem.*, 557 U.S. at 155.

Like the creditor in *Travelers Indemnity*, Cole was a party in the bankruptcy proceeding. The debtors served him with the Notice of Bar Date, informing him of the deadline to file his proofs of claim with the bankruptcy court. Cole, as a claimholder, was a "Releasing Party" under the Plan the bankruptcy court confirmed. (Docket Entry No. 2 at 3498). Cole had the opportunity to directly challenge the debtors' Plan but he failed to do so. He did not object at the Plan-confirmation hearing or appeal the Confirmation Order. The bankruptcy court dismissed Cole's motion to lift the automatic stay, without prejudice, and Cole did not file a renewed motion. Cole did not raise the jurisdictional argument until his appeal from the bankruptcy court's Order enjoining his lawsuit or

arbitration.  Preclusion bars Cole from raising the same claims that he could have asserted in the bankruptcy court in a subsequent lawsuit or arbitration.  *Travelers Indem.*, 557 U.S. at 155; *see also In re Davis Offshore, L.P.*, 644 F.3d 259, 265 (5th Cir. 2011) ("[A] bankruptcy court's plan confirmation order cannot, after it becomes final, be collaterally attacked by parties to the case or those in privity with them on grounds that it exceeded the bankruptcy court's jurisdiction.").

Cole contends that preclusion should not apply to him because his claim "was so plainly beyond the Bankruptcy Court's jurisdiction that entertaining it was clearly wrong."  (Docket Entry No. 6).  This argument is unpersuasive.  Both *Travelers Indemnity* and *In re Davis Offshore* addressed similar jurisdictional questions.  And, as discussed below, the bankruptcy court did not err in exercising its jurisdiction to approve the Plan, which included Cole's and other creditors' consensual release of their claims against nondebtors, if those claims were related to the bankruptcy proceeding.  Cole's was.

## 2.      The Third-Party Release

Cole makes three arguments attacking the bankruptcy court's jurisdiction: (1) § 504 of the Bankruptcy Code prohibits releasing claims against entities that are not debtors in the bankruptcy, such as Nabors Corporate and Nabors Industries; (2) the bankruptcy court did not have "related to" jurisdiction over Cole's claims against these nondebtor entities because these claims would not affect the bankruptcy estate; and (3) even if the bankruptcy court could release claims against nondebtor entities, the release does not apply to Cole because he did not consent to the Plan.  The court addresses each of these arguments separately.[4]

---

[4] Cole did not challenge the bankruptcy court's jurisdiction based on Article III of the Constitution.  In *Stern v. Marshall*, 564 U.S. 462 (2011), the Supreme Court held that Article III imposes some restrictions on a bankruptcy judge's power to rule with finality.  A bankruptcy court is permitted to issue final judgments and orders when the issue "arises in" or "arises under" bankruptcy (core proceeding), but not where the issue

### a.     The Bankruptcy Court's Releases of Nondebtors

Cole contends that a bankruptcy court cannot, in any situation, release claims against nondebtors, such as Nabors Corporate and Nabors Industries, brought by a nondebtor claimant, such as Cole. This argument is unpersuasive.

A bankruptcy court has jurisdiction to enter a final judgment on matters related to a bankruptcy proceeding. 28 U.S.C. § 1334; *In re KSRP, Ltd.*, 809 F.3d 263, 266 (5th Cir. 2015). "Congress intended to grant comprehensive jurisdiction to the bankruptcy courts so that they might deal efficiently and expeditiously with all matters connected with the bankruptcy estate." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995); *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984). "[T]he 'related to' language of § 1334(b) must be read to give district [and bankruptcy] courts jurisdiction over more than simple proceedings involving the property of the debtor or the estate." *Celotex*, 514 U.S. at 308. The Bankruptcy Code does not prevent a bankruptcy court from approving a release of claims against nondebtors under certain circumstances. Section 105(a) allows bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of the [Code]." 11 U.S.C. § 105(a). A bankruptcy court may confirm a plan that modifies a relationship between a creditor and a nondebtor third-party. *See* 11 U.S.C. §§ 1123(b)(5), 1129(a)(1); *United States v. Energy Res. Co. Inc.*, 495 U.S. 545, 549 (1990); 11 U.S.C. §§ 1123(b)(5), 1129(a)(1).

---

is merely "related to" bankruptcy (non-core proceeding). In *In re Millennium Lab Holdings II, LLC*, 575 B.R. 252 (Bankr. D. Del. 2017), the bankruptcy court explained that *Stern* does not prevent bankruptcy judges from exercising jurisdiction to issue confirmation orders approving plans that contain a third-party release, because entering a confirmation order is a core proceeding governed by federal law. *Id.* 269–70. In addition, Article III will be satisfied if the parties knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network, Ltd. v. Sharif*, 135 S.Ct. 1932, 1938–39 (2015) (holding that parties may consent to jurisdiction on non-core matters). For the reasons discussed below, Cole consented to the bankruptcy court's jurisdiction and the Article III requirement is satisfied.

There is a circuit split as to the scope of a bankruptcy court's power to approve a release of creditors against a nondebtor. *In re Vitro S.A.B. de CV*, 701 F.3d 1031, 1061–62 (5th Cir. 2012). Some circuits have found that bankruptcy courts have jurisdiction to discharge claims against nondebtors in some circumstances. *See, e.g.*, *In re Dow Corning Corp.*, 280 F.3d 648, 658–61 (6th Cir. 2002)[5]; *In re Nat'l Heritage Found., Inc. v. Highbourne Found.*, 760 F.3d 344, 347 (4th Cir. 2014) (adopting *Dow Corning*); *In re Seaside Eng'g & Surveying, Inc.*, 780 F.3d 1070, 1079 (11th Cir. 2015) (adopting *Dow Corning*); *In re Specialty Equip. Cos.*, 3 F.3d 1043, 1044–49 (7th Cir. 1993) (§ 524(e) does not bar releasing claims against third parties when the release is consensual, noncoercive, and would bind only creditors with notice of the plan). In *Dow Corning*, the Sixth Circuit explained that "the bankruptcy court, as a forum for resolving large and complex mass litigations, has substantial power to reorder creditor-debtor relations needed to achieve a successful reorganization." 280 F.3d at 655.

The Fifth Circuit has concluded that a bankruptcy court may not confirm a plan that provides "non-consensual non-debtor releases." *In re Vitro S.A.B. de CV*, 701 F.3d at 1061–62 (citing *In re Pac. Lumber Co.*, 584 F.3d 229, 251 (5th Cir. 2012)). The Fifth Circuit does not preclude bankruptcy courts from approving a "consensual non-debtor release." Bankruptcy courts within the

---

[5] In *Dow Corning*, the Sixth Circuit affirmed a bankruptcy court's approval of a confirmation plan discharging nonconsenting creditors' claims against a third party. *In re Dow Corning Corp.*, 280 F.3d at 648. The court emphasized that "enjoining a non-consenting creditor's claim against a non-debtor" is "a dramatic measure to be used cautiously." The court listed seven factors for the release: "(1) There is an identity of interests between the debtor and the third party . . .; (2) The non-debtor has contributed substantial assets to the reorganization; (3) The injunction is essential to reorganization . . .; (4) The impacted class, or classes, has overwhelmingly voted to accept the plan; (5) The plan provides a mechanism to pay for all, or substantially all, of the class or classes affected by the injunction; (6) The plan provides an opportunity for those claimants who choose not to settle to recover in full; and (7) The bankruptcy court made a record of specific factual findings that support its conclusion." 280 F.3d at 658. These factors are intended to ensure "an opportunity for those claimants who choose not to settle to recover in full" to litigate and resolve their claims in the bankruptcy proceeding.

Fifth Circuit commonly exercise jurisdiction to approve nonparty releases based on agreed plans. *See, e.g.*, *In re Wool Growers Cent. Storage Co.*, 371 B.R. 768, 775–76 (Bankr. N.D. Tex. 2007) ("Consensual nondebtor releases that are specific in language, integral to the plan, a condition of the settlement, and given for consideration do not violate section 524(e)."); *In re Bigler LP*, 442 B.R. 537, 543–44 (Bankr. S.D. Tex. 2010) (a bankruptcy court may exercise its power under § 1123(b)(3)(A) to approve a settlement between creditors and debtors that releases a nonparty because it was based on the creditor's consent, for consideration, and pursuant to arm's length negotiations); *In re Camp Arrowhead, Ltd.*, 451 B.R. 678, 701–02 (Bankr. W.D. Tex. 2011) ("the Fifth Circuit does allow permanent injunctions so long as there is consent," and "[w]ithout an objection, [the bankruptcy court] was entitled to rely on [the creditor's] silence to infer consent at the confirmation hearing")[6]; *In re Pilgrim's Pride Corp.*, No. 08-45664-DML-11, 2010 WL 200000, at *5 (Bankr. N.D. Tex. Jan. 14, 2010) (the Fifth Circuit does not bar the bankruptcy court "from retaining jurisdiction over at least some suits against third parties which would have been covered by the [p]lan's third-party protections").

Cole's argument that bankruptcy courts may not approve any third-party release lacks merit. The issues are whether Cole's release was consensual and sufficiently related to the bankruptcy proceeding.

### b. Cole Consented to the Plan and Nondebtor Releases

Cole argues that, even if the bankruptcy court had jurisdiction to approve a consensual nondebtor release as part of the Plan, the release of the Nabors entities does not apply to him because

---

[6] The bankruptcy court also suggested that it may have jurisdiction to approve a plan discharging a nonparty if the action "belong[s] to the estate or its proper successors pursuant to a plan" or it may "prevent undermining the efficacy of the plan and its distribution scheme." *In re Camp Arrowhead, Ltd.*, 451 B.R. at 701.

he did not consent by voting for the plan.[7] "Consent" in a nondebtor-release dispute, Cole contends, requires affirmative action. (Docket Entry No. 9 at 8–9). Cole admits that some courts treat a creditor's silence as a consent to some transactions or events, but he argues that consent to nondebtor releases requires more than silent acquiescence. (Docket Entry No. 9 at 8 (citing *Futuresource LLC v. Reuters, Ltd.*, 312 F.3d 281, 286 (7th Cir. 2002) (nonobjection is deemed consent for § 363(f) sales); *cf. In re Specialty Equip. Cos.*, 3 F.3d at 1047 (a consensual release binds creditors voting in favor of the plan of reorganization))).

Although the Fifth Circuit treats a nonconsensual third-party release differently from a consensual one, it has not explained what "consensual" means in this context. The Fifth Circuit has treated a claimant as nonconsenting because, besides not voting for the plan, she directly challenged it before it became final. *See, e.g.*, *In re Pac. Lumber Co.*, 584 F.3d at 236–39. If a claimant votes in favor of the plan and receives consideration in exchange for a third-party release integral to it, that act is treated as consenting to the bankruptcy court's jurisdiction to approve the third-party release. *See, e.g.*, *In re Bigler LP*, 442 B.R. at 546.

Cole's argument raises the question whether he, a claimant who did not object to the Plan or directly appeal from the bankruptcy court's Confirmation Order before it became final, consented to a third-party release in the Plan, if, due to his failure to file a proof of claim, he was not entitled to vote on Plan confirmation.

A claimholder must file a proof of claim with the bankruptcy court before the bar date. FED. R. BANKR. P. 3002(c); 11 U.S.C. § 501. If a late filer received reasonable notice, like Cole did, he

---

[7] Cole raised this argument for the first time before this court. Cole argues that he did not have the opportunity to raise this argument before the bankruptcy court because the court granted the debtor's motion to enjoin within 6 days after it was filed and without a hearing.

is barred from bringing claims against the debtor. *In re Robintech, Inc.*, 863 F.2d 383, 396 (5th Cir. 1989). Cole asked the bankruptcy court to lift the automatic stay to proceed with his claims against C&J Well Services in a separate forum, but he did not ask for leave to file a late claim under Rule 9006(b)(1). *See In re DLH Master Land Holding, L.L.C.*, 464 F. App'x 316, 318–19 (5th Cir. 2012) (per curiam) (discussing a bankruptcy court's discretion to allow a late filing); *Pioneer Inv. Servs. Co. v. Brunswick Assoc. Ltd. P'ship.*, 507 U.S. 380, 395 (1993).

Although a claimholder who did not file a proof of claim within the bar-date deadline is subject to the automatic stay, that claimholder may still participate in the bankruptcy proceeding by raising objections to the bankruptcy court's orders or to the debtors' plan before confirmation. *See, e.g.*, *In re Walker*, 526 B.R. 187, 193–94 (E.D. La. 2015) ("[A]ppellant's failure to file a proof of claim is separate from its failure to provide the necessary documentation in support of its objection to the plan."). If a claimholder receives notice of the bankruptcy proceeding, including the bar date, the debtors' proposed plan, and the confirmation hearing, but has failed to timely file a proof of claim, appear in the bankruptcy proceeding, or object to the plan, that claimholder cannot appeal from the bankruptcy court's confirmation order. *See In re Palmaz Sci. Inc.*, 262 F. Supp. 3d 428, 437 (W.D. Tex. 2017) (examining the Fifth Circuit's restrictive view on nonobjecting creditors' rights); *In re Watch, Ltd.*, 257 F. App'x 748, 748–50 (5th Cir. 2007); *In re Tullius*, 500 F. App'x 286, 290 n.13 (5th Cir. 2012).

The Fifth Circuit's view of a late filer's ability to appeal is restrictive. A silent late filer, like Cole, may not appeal a bankruptcy court's plan-confirmation order, even if the plan includes releases of the filer's claims against a nondebtor. This view supports Nabors Corporate and Nabors Industries's argument that Cole consented to the plan by failing to object.

The record shows, and Cole admits, that he received notice of the bankruptcy proceeding, of the deadline for filing his proof of claim, of the debtors' proposed plan, and of the hearing date. The record shows, and Cole admits, that he did not file a proof of claim before the deadline, but instead moved to lift the automatic stay. After the bankruptcy court dismissed Cole's motion without prejudice, he did not renew the motion. Cole had the opportunity to participate in the plan-confirmation hearing and to raise objections before the bankruptcy court. He did neither. Allowing the bankruptcy court to approve the Plan releases, including construing Cole's silence as consent, serves the bankruptcy law's purpose of quick and efficient resolution of claims to permit a debtor's business to continue. *Katchen v. Landy*, 382 U.S. 323 (1966) ("[A] chief purpose of the bankruptcy law is to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period."). It is also consistent with applying preclusion to prevent Cole's collateral attack on the bankruptcy court's final decision. *Travelers Indem.*, 557 U.S. at 152; *In re Davis Offshore, L.P.*, 644 F.3d at 265.

Cole argues that he did not understand the Plan because it is long and full of complicated legal terms, and that it is unfair to find that it released his claims against the nondebtor Nabors entities. (Docket Entry No. 9 at 9–10). Cole's argument challenges the sufficiency of the notice he received of the proposed Plan. In *Mullane v. Central Hanover Bank and Trust Company*, 339 U.S. 306 (1950), the Supreme Court articulated the standard for adequate notice:

> An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections. The notice must be of such nature as reasonable to convey the required information, . . . and it must afford a reasonable time for those interested to make their appearance. But if with due regard for the practicalities and peculiarities of the case these conditions are reasonably met[,] the constitutional requirements are satisfied.

339 U.S. at 314–15; *In re Placid Oil Co.*, 753 F.3d 151, 154 (5th Cir. 2014). Cole does not dispute that he received notice of the debtors' Plan, including the release. The Plan contained a paragraph set off by the heading in bold font, "Release by Holders of Claims and Interests." The Plan clearly stated that the "Releasing Parties" were all claimholders, clearly including Cole. The Plan stated that "Released Parties" included "Nabors," which was defined in the Plan to mean Nabors Industries and its subsidiaries and affiliates, clearly including both Nabors Industries and Nabors Corporate. (Docket Entry No. 2 at 3917, 3919–20, 3951–53).

Cole neither provides facts nor identifies evidence that the Plan misled him. The record shows that before the Plan was confirmed, Cole was represented by counsel. Cole had access to legal advice, and he was responsible for seeking legal advice on what specific Plan terms meant. Neither the Supreme Court nor the Fifth Circuit requires a debtor or a bankruptcy court to help creditors understand a proposed plan. Cole's argument is unpersuasive.

The bankruptcy court did not err in approving the third-party releases and enforcing the Plan by enjoining Cole from pursuing claims in litigation or arbitration against the released entities, including Nabors Corporate and Nabors Industries.

### c.     Cole's Claims Are "Related To" the Bankruptcy Proceeding

Cole argues that the bankruptcy court did not have subject-matter jurisdiction to release his claims because they are not "related to" the bankruptcy proceeding, as required by 28 U.S.C. § 1334. The Fifth Circuit has not explained whether the court must apply the "related to" analysis to a consensual third-party release. Applying this analysis, Cole's claims are sufficiently related to C&J Well Services's bankruptcy proceeding to withholder his jurisdictional attack.

A bankruptcy court has "related to" jurisdiction to hear a claim if "the outcome of that

proceeding could conceivably have any effect on the estate being administered in bankruptcy." *In re Chesnut*, 356 F. App'x 732, 737 (5th Cir. 2009) (quoting *In re Wood*, 825 F.2d 90, 93 (5th Cir. 1987)). "[A]n action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action and . . . in any way impacts upon the handling and administration of the bankruptcy estate." *In re Galaz*, 765 F.3d 426, 430 (5th Cir. 2014) (quoting *In re Walker*, 51 F.3d 562, 569 (5th Cir. 1995)); *see also In re TXNB Internal Case*, 483 F. 3d 292, 298 (5th Cir. 2007) (related-to jurisdiction is broadly read, certainty is unnecessary).

Claims that are essential to the debtors' bankruptcy plan and that play an important role in the debtors' successful reorganization are within the bankruptcy court's jurisdiction. *See In re Wool Growers Cent. Storage Co.*, 371 B.R. at 775–76 (the bankruptcy court may approve nonparty releases of claims when these releases are integral to a plan, a condition of the creditor-debtor settlement, and are specifically provided); *In re Sabine Oil & Gas Corp.*, 555 B.R. 180, 289–94 (Bankr. S.D. N.Y. 2016). A third party's financial contribution to the debtors' plan can be relevant in showing that releasing the third party from liability is "related to" the bankruptcy administration. *See In re Dow Corning*, 280 F.3d at 656–67. But a third party may not "purchase immunity from unrelated torts" by simply agreeing to make a financial contribution to the debtors' settlement with other creditors. *In re Midway Gold US, Inc.*, 575 B.R. 475, 519–20 (Bankr. D. Colo. 2017). The bankruptcy court generally may not approve a release of future claims that will arise only after the bankruptcy proceeding is concluded. *E.g., In re SunEdison, Inc.*, 576 B.R. 453, 463 (Bankr. S.D.N.Y. 2017).

The record supports the bankruptcy court's finding that it has "related to" jurisdiction over Cole's claims of sexual harassment, discrimination, and retaliation. Cole agreed that he was hired

by the debtor, C&J Well Services. His claims are based on events that occurred during Cole's employment with the C&J Well Services.[8] (Docket Entry No. 6 at 8). Nabors Corporate and Nabors Industries are potentially liable to Cole because, as the debtor's affiliate or parent company, each could be liable as an employer under Title VII. 42 U.S.C. § 2000e(b); *Juino v. Livingston Par. Fire Dist. No. 5*, 717 F.3d 431, 434–35 (5th Cir. 2013) (applying the "economic realities/common law control test" to determine the employment relationship). Because C&J Well Services hired Cole and controlled his performance during his employment, Cole's claims against the related Nabors affiliates are derived from, based on, and closely related to, C&J Well Services's actions, and the claims were within the bankruptcy court's jurisdiction. *In re Galaz*, 765 F.3d at 430. The record shows that Nabors Corporate and Nabors Industries did not have insurance to cover Cole's claims. (Docket Entry No. 2 at 7256). If Cole prevailed in his litigation or arbitration, Nabors Corporate and Nabors Industries might seek indemnifications from C&J Well Services, which could affect the debtors' estate and the bankruptcy administration. (*Id*. at 7268).[9]

As Cole concedes, the bankruptcy court has jurisdiction to approve the release of his discrimination and related claims against C&J Well Services. The discharge not only protects the debtor from paying damages to a prevailing plaintiff, but also protects the debtor from expensive

---

[8] Cole's complaint filed in the Western District of Texas is brief. He alleged that "[Nabors Industries and Nabors Corporate] have been an 'employer' within the meaning of Title VII, Texas Commission of Human Rights Act, and 42 U.S.C.§ 1981," and that Cole's supervisor, Jacky Richardson, created a hostile work environment by making severe and pervasive discriminatory comments based on Cole's sex. Cole also alleged that Richardson sexually assaulted him. The complaint did not detail Cole's or Richardson's employment relationships with Nabors Industries and Nabors Corporate. (Docket Entry No. 2 at 4062–63).

[9] Cole alleged that C&J Well Services would not be liable to indemnify Nabors Corporate and Nabors Industries if he prevailed on these claims. (Docket Entry No. 6 at 17). But it is unclear whether the Nabors entities have indemnity agreement with C&J Well Services or other bases for contribution, and they could be jointly and severally liable to Cole with C&J Well Services. Indemnification, at least, is conceivable.

and time-consuming discovery in litigation. Because Cole's claims were based on C&J Well Services's conduct, allowing him to proceed with his lawsuit or an arbitration, even against the affiliate or parent company, could impose costs on C&J Well Services. The costs will be significant if C&J Well Services's employees could, like Cole, pursue the same claims against its affiliates or subsidiaries that were discharged as to C&J Well Services in the bankruptcy.[10]

The third-party release was an integral part of the Confirmation Plan. (Docket Entry No. 2 at 3706–07). The bankruptcy court's Confirmation Order stated that the third-party release was "in exchange for good and valuable consideration provided by the release parties," "a good-faith settlement and compromise," and "materially beneficial" to the debtors. (*Id.*). The Order extends to claims against Nabors Industries and its subsidiaries and affiliates, including entities other than the debtors in the bankruptcy proceeding. (*Id.* at 3645, 3647). The bankruptcy court had "related to" jurisdiction over the released claims against these nondebtors. *See, e.g.*, *In re Wool Growers Cent. Storage Co.*, 371 B.R. at 775–76; *In re Bigler LP*, 442 B.R. at 543–44; *In re Camp Arrowhead, Ltd.*, 451 B.R. at 701–02.

Relying on *In re Zale Corporation*, 62 F.3d 746 (5th Cir. 1995), Cole argues that the bankruptcy court may not release his claims against Nabors Industries and Nabors Corporate, because these claims would not be compensated by the bankruptcy estate, and because any agreement to indemnify is not enough to confer jurisdiction. (Docket Entry No. 6, at 16–17). In *Zale*, the bankruptcy court approved a settlement between the debtor and its directors, on one side, and the liability insurer of the debtor's directors and officers on the other. *Zale*, 62 F.3d at 749–50.

---

[10] Before this action, the bankruptcy court issued an order enjoining another prior employee of C&J Well Services from bringing claims against Nabors Corporate and Nabors Industries. (Docket Entry No. 2 at 7325–27).

The settlement included a permanent injunction that prevented both settling and nonsettling parties from suing the debtor's directors, officers, and the insurer, who were not debtors in the bankruptcy proceeding, for bad faith and breach of contract relating to the settlement. *Id*. The Fifth Circuit found that the bankruptcy court did not have "related to" jurisdiction to discharge an objecting creditor's tort claims against a third party, even if the debtor had agreed to indemnify the third party for these claims. According to the Fifth Circuit, although the claimants could sue either the debtors or the directors, officers, and insurers for their independent misconduct, the existence of shared facts in conflicts between a claimant and a nondebtor and between the claimant and the debtor was insufficient to confer jurisdiction. *Id*. at 753–55.

Nabors Corporate and Nabors Industries respond that *Zale* prohibits only nonconsensual releases, not consensual ones. (Docket Entry No. 8 at 25). Their argument is persuasive. *Zale* involved a settlement intended to discharge objecting creditors' claims against nondebtors. *Zale* and other Fifth Circuit decisions have invalidated bankruptcy plans discharging claims against third parties over the claimholders' objections to avoid an aggressive expansion of bankruptcy jurisdiction with no protection to objecting claimholders. *See In re Zale Corp.* 62 F.3d at 754–55 (discussing the court's duties to preserve the estate and to protect creditors); *see also In re Vitro S.A.B de CV*, 701 F.3d at 1070–71 (discussing the policy of protecting the claims of an objecting third party).

Cole did not object to the bankruptcy court's confirmation order or appeal it to the district court. The claimholder in *Zale* did object, clearly not consenting to the plan. In *Zale*, the released claims were based on the third parties' liabilities independent from the debtor's conduct. In absence of an indemnity agreement, the creditors could not pursue those claims against the debtor, directly or indirectly. *Id*. 755–56. *Zale* prevents third parties from purchasing immunity in the bankruptcy

proceeding for their own liabilities unrelated to the debtor's conduct. In this case, the bankruptcy court's December 2016 Confirmation Order only released claims against nondebtors that were "based on or relating to . . . the Debtors' [conduct,] omission, transaction, agreement, [or] event . . . taking place on or before the Effective Date." (Docket Entry No. 2, at 3951–52).

Cole's claims against Nabors Corporate and Nabors Industries are based on C&J Well Services's conduct. These claims could affect the bankruptcy estate, alter "the debtor's rights, liabilities, options, or freedom of action," and influence the bankruptcy administration. *In re Galaz*, 765 F.3d at 430*; In re TXNB Internal Case*, 483 F. 3d at 298. The bankruptcy court had "related to" jurisdiction over these claims.

### B. Federal Rules of Bankruptcy Procedure 9014 and 9006

Cole argues that the bankruptcy court violated Federal Rules of Bankruptcy Procedure 9014 and 9006(d) by granting the Nabors Corporate's motion to enjoin without setting a hearing or giving Cole time to respond. (Docket Entry No. 6 at 11). Rule 9014(a) requires the bankruptcy court to give "reasonable notice and opportunity for hearing" in "contested matters" to the party against whom relief is sought. FED. R. BANKR. P. 9014. The Second, Ninth, and Eleventh Circuits have found that motions for violations of a plan injunction are "contested matters" governed by Rule 9014. *In re Kalikow*, 602 F.3d 82, 93–94 (2d Cir. 2010); *Barrientos v. Wells Fargo Bank, N.A.*, 633 F.3d 1186, 1191 (9th Cir. 2011); *In re McLean*, 794 F.3d 1313, 1326 (11th Cir. 2015). Rule 9006(d) requires serving the parties with written notice "not later than seven days before the time specified for [a] hearing [on the contested matter]." The party served may file a response "not later than one day before the hearing." FED. R. BANKR. P. 9006(d). The bankruptcy court may, for cause, shorten the time to respond or to prepare for the hearing. FED. R. BANKR. P. 9006(c)(1).

On August 23, 2018, Nabors Corporate moved to enforce the Confirmation Order. (Docket Entry No. 2 at 1). Six days later, the bankruptcy court granted the motion, enjoining Cole from "pursuing any and all claims against the debtors and other released parties." (*Id.* at 2501). Cole did not respond before the bankruptcy court granted the motion. The bankruptcy court did not hold a hearing or issue an order shortening the time required for Cole to respond. Cole contends that the bankruptcy court violated Rule 9006.

Nabors Corporate argues that the court did not err in ruling on the motion without a hearing. The bankruptcy court has flexibility and discretion to decide when a full hearing is required. (Docket Entry No. 8, at 28 citing *Int'l Transactions, Ltd. v. Embotelladora Agral Regiomontana, S.A. de CA*, 347 F.3d 589, 594 (5th Cir. 2003)). The record shows that in 2016 and 2017, Cole filed a motion and an amended motion with the bankruptcy court, asking to proceed with litigation on his Title VII claims against C&J Well Services. (Docket Entry No. 2, at 4005–14). The bankruptcy court denied Cole's motions after a hearing. (*Id.* at 4044). Nabors Corporate argues that the bankruptcy court had given Cole adequate opportunity to argue his case and no further hearing was necessary. The bankruptcy court, however, did not hear the parties' argument about, or resolve issues of, the third-party release.

Even if the bankruptcy court violated Rule 9014 and Rule 9006(d) by deciding Nabors Corporation's motion before Cole's time to respond expired, the error is harmless. Fed. R. Bankr. P. 9005 (adopting the harmless-error rule); *In re Age Ref., Inc.*, 801 F.3d 530, 543 & n.42 (5th Cir. 2015). "Unless justice requires otherwise, no error . . . is ground for . . . vacating, modifying, or otherwise disturbing a judgment order. . . . [T]he court must disregard all errors and defects that do not affect any party's substantial rights." Fed. R. Civ. P. 61. Cole cannot show that his substantial

rights were affected, because the bankruptcy court clearly had jurisdiction to approve the release and to enjoin him from pursuing his lawsuit or arbitration against Nabors Corporate and Nabors Industries, and because his arguments fail as a matter of law.

**IV.    Conclusion**

The bankruptcy court's August 2018 Order Enforcing Confirmation Order and Plan Injunction Against John Cole is affirmed.  This case is dismissed.  An order of dismissal is separately entered.

SIGNED on February 8, 2019, at Houston, Texas.

Lee H. Rosenthal
Chief United States District Judge